IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Lincoln Benefit Life Company, | : | |
| | : | Case No. 1:22-cv-524 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Denying Motion to Dismiss |
| Timothy Bolton and Richard Schulte II, | : | Counterclaims |
| | : | |
| Defendants. | : | |

This matter is before the Court on Lincoln Benefit Life Company's ("LBLC's") second Motion to Dismiss the counterclaims against it pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 33.) LBLC filed this interpleader action seeking a determination as to which of two Defendants, Timothy Bolton or Richard Schulte II, were entitled to the proceeds of a life insurance policy. On January 10, 2023, LBLC deposited with the Clerk of Courts the insurance proceeds in the amount of $125,389.90. (Doc. 16.) Schulte filed counterclaims against LBLC asserting that it was liable for mishandling beneficiary requests made by the insured and creating the situation in which there were two competing parties for the policy proceeds. (Doc. 9 at PageID 81–95.) On May 2, 2023, the Court dismissed several of Schulte's counterclaims against LBLC, but the Court allowed Schulte to proceed on his breach of the insurance contract and bad faith breach counterclaims. (Doc. 28 at PageID 253–254.)

Thereafter, Bolton and Schulte resolved the primary dispute as to whom was entitled to the life insurance proceeds. They entered into a Stipulated Agreed Order and Partial Dismissal ("Stipulated Order") awarding $100,389.90 in proceeds to Bolton and $25,000 in proceeds to Schulte. (Doc. 29 at PageID 255.) LBLC now moves to dismiss the remaining counterclaims

1

against it arguing that the Stipulated Order signed by Schulte resolved and rendered moot the counterclaims. (Doc. 33.) Schulte has filed a Memorandum in Opposition to the Motion to Dismiss, to which LBLC has filed a Reply. (Docs. 34, 35.) For the reasons that follow, the Court will deny LBLC's Motion to Dismiss.

I. ANALYSIS

LBLC moves to dismiss Schulte's counterclaims against it for breach of the insurance contract and bad faith on the basis that the language agreed to by Schulte in the Stipulated Order mooted the counterclaims. In addition to agreeing to divide the insurance proceeds between them in an approximate 4:1 split in favor of Bolton, Schulte also agreed in the Stipulated Order to the following:

> Both Bolton and Schulte further agree that this stipulated resolution as to the payment of the insurance proceeds fully and completely settles any and all claims either Bolton or Schulte have or might have against the other. *This stipulation further completely settles any and all claims either Bolton or Schulte have or might have as it relates to these insurance proceeds.*

(Doc. 29 at PageID 255 (emphasis added).) LBLC's argument is straightforward: because Schulte agreed that the Stipulated Order "completely settles any and all claims" Schulte has "relate[d] to these insurance proceeds[,]" his claims against LBLC for those insurance proceeds are now moot. The doctrine of mootness arises from the principal that district courts only have jurisdiction under Article III § 2 of the Constitution to resolve actual cases and controversies. *See Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986). "Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Id.*; *see also Teamsters Loc. Union No. 1199 v. Coca-Cola Consol., Inc.*, 854 F. App'x 675, 677 (6th Cir. 2021) (quoting *Carras*).

LBLC's mootness argument, however, ignores additional language in the Stipulated Order that states that only Bolton is dismissed from the action and that Schulte's counterclaims

2

against LBLC continue:

> Further, Bolton and Schulte stipulate that by this stipulation, Bolton should be fully and completely dismissed from this action *and the only remaining claims in this cause are certain counter-claims asserted by Schulte against Lincoln Benefit Life Company.*

(Doc. 29 at PageID 256 (emphasis added).) Contracts are to be interpreted to give meaning to every provision and render no provision superfluous. *See Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 363 (6th Cir. 2014) ("[A] contract must be construed in its entirety and in a manner that does not leave any phrase meaningless or surplusage.") (citation omitted); *Ohio v. Bethel*, 110 Ohio St. 3d 416, 854 N.E.2d 150, 166 (2006) (instructing that courts should give meaning to every provision in a contract where possible).

Here, it is possible to give meaning to both excerpted provisions in the Stipulated Order. In the first excerpted provision, Schulte agreed to dismiss any claim he might have for the actual insurance proceeds, that is, the interpleader funds in the amount of $125,389.90 deposited with the Clerk of Court on January 10, 2023. (Doc. 16.) It is those insurance proceeds which the Clerk of Court is to distribute to Bolton and Schulte in the amounts and manner specified in the Stipulated Order. (Doc. 29 at PageID 256.) On the other hand, in the second excerpted provision from the Stipulated Order, Schulte expressed his intent to proceed on his counterclaims against LBLC for damages separate from the insurance proceeds themselves.

In the remaining counterclaims, Schulte alleges that LBLC processed a Change of Beneficiary form from the insured naming Schulte as the primary beneficiary despite knowing that the insured had previously purported to name Bolton as an irrevocable beneficiary. (Doc. 9 at PageID 83–84.) Schulte's damages arise from that alleged bad faith conduct. *See Lee v. West Coast Life Ins. Co.*, 688 F.3d 1004, 1014 (9th Cir. 2012) (also stating that damages do not arise from the insurer's decision to file the interpleader action). "Under Ohio law, a plaintiff may

recover both actual and consequential damages" for a breach of contract. *Wellington Corp LLC v. Gennari Consulting, Inc.*, 631 F. Supp. 3d 464, 474 (N.D. Ohio 2022) (citing *Telxon Corp. v. Smart Media of Del., Inc.*, Nos. 22098, 22099, 2005-Ohio-4931, ¶ 103 (Ohio Ct. App.)). Additionally, "an insurer who acts in bad faith is liable for those compensatory damages flowing from the bad faith conduct of the insurer and caused by the insurer's breach of contract." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 644 N.E.2d 397, 402 (1994); *see also Carpenter v. Liberty Ins. Corp.*, 413 F. Supp. 3d 727, 732 (S.D. Ohio 2019) (following *Zoppo*). These "extra-contractual damages" are "over and above those covered by the insurance contract sustained by the insured as a consequence of the insurer's bad faith[.]" *Bonasera v. New River Elec. Corp.*, 518 F. Supp. 3d 1136, 1146 (S.D. Ohio 2021) (citation omitted). Compensatory damages can include attorney fees if a jury determines that punitive damages are warranted. *Zoppo*, 644 N.E.2d at 402; *Carpenter*, 413 F. Supp. 3d at 732. Because Schulte can seek damages separate from the actual insurance proceeds, his counterclaims are not mooted by the terms of the Stipulated Order.

Finally, LBLC simply repackages this mootness argument when it also argues that Schulte is equitably estopped from seeking recovery from LBLC for the insurance proceeds. Schulte has not taken inconsistent positions by settling his claim with Bolton for the insurance proceeds and continuing to seek liability against LBLC for bad faith. The Court will not dismiss the counterclaims on this basis.

## II. CONCLUSION

For the foregoing reasons, LBLC's Motion to Dismiss (Doc. 33) the remaining counterclaims is **DENIED**.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge